# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

In re: Greater Bethlehem Missionary Baptist Church )
                Debtor(s)

) Judge Janet S. Baer
)
) Case No. 16-11470
)
) Chapter 11

### NOTICE OF MOTION

To the following named persons or entities: (Separate Service List may be attached)

| | |
|---|---|
| Greater Bethlehem Church Missionary Baptist Church<br>2400 W. Warren Blvd<br>Chicago, IL 60612 | U.S. Trustee<br>227 W. Monroe, Suite 3350<br>Chicago, IL 60606 |
| James Sullivan, Partner<br>Chapman & Cutler LLP<br>111 West Monroe Street<br>Chicago, IL 60603<br>Fax 312-516-1445 | BMO Harris Bank N.A.<br>111 W. Monroe<br>Chicago, IL 60603 |

Please take notice that on April 13, 2016 at 9:30am, I shall appear before the Honorable Judge Janet S. Baer at the U.S. Bankruptcy Court located at 219 S. Dearborn, Courtroom 615, Chicago, Illinois 60604 and present the DEBTOR'S MOTION FOR ENTRY OF AN INTERIM ORDER AND, AFTER FURTHER NOTICE AND HEARING: A FINAL ORDER AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL; GRANTING ADEQUATE PROTECTION TO BMO Harris Bank N.A.; AND DEEMING A BMO Harris Bank N.A. ADEQUATELY PROTECTED THEREBY

Date of Service: April 4, 2016        Signature: /s/Robert J. Adams
                                                                                       Robert J. Adams

<u>CERTIFICATE OF SERVICE\*</u>

I, Robert J. Adams, an attorney, certify that a copy of this Notice and attached documents were served upon the above-entitled parties by depositing same in the United States mail\* at 901 W. Jackson, Suite 202, Chicago, IL 60603, with sufficient postage prepaid by Robert J. Adams & Associates.

Date of Service:  April 4, 2016                                   Signature:   /s/Robert J. Adams
                                                                                                    Robert J. Adams

\*Where indicated, some parties have been served electronically instead of by mail

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

In re: Greater Bethlehem Missionary Baptist Church )
           Debtor(s) ) Judge Janet S. Baer
)
) Case No. 16-11470
)
) Chapter 11

**DEBTOR'S MOTION FOR ENTRY OF AN EMERGENCY OR INTERIM ORDER AND, AFTER FURTHER NOTICE AND HEARING: A FINAL ORDER AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL; GRANTING ADEQUATE PROTECTION TO BMO HARRIS BANK N.A.; AND DEEMING BMO HARRIS BANK N.A.; ADEQUATELY PROTECTED THEREBY**

NOW COMES ("Greater Bethlehem Missionary Baptist Church or "Debtor") as debtor and debtor in possession by and through its attorneys, Robert Adams and Associates, and, pursuant to §§ 105, 361, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. ( the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby submits its motion for entry of (a) an order substantially in the form filed herewith (the "Interim Cash Collateral Order") (i) authorizing the Debtor's use of cash and non-cash collateral, (ii)(A) granting adequate protection to BMO Harris Bank N.A., ("Bank") and (b) deeming Bank adequately protected thereby, and (ii) scheduling a hearing to consider entry of a Final Cash Collateral Order (as defined below); and (B) after further notice and a hearing, a final order (the "Final Cash Collateral Order:"), authorizing the relief granted in the Agreed Interim Cash Collateral Order on a permanent basis. In Further support of this Motion, the Debtor respectfully states as follows.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O).

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1408.

3. The basis for the relief requested herein are Sections 105(a), 361, and 363(c) of Title 11 of the United States Code, Rule 4001(b) of the Federal Rules of Bankruptcy Procedure, and 4001-2 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois.

## BACKGROUND

4. On April 3, 2016 (the "Petition Date") the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code and commenced the above captioned Chapter 11 case. The Debtor is operating its Church and managing its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no request for the appointment of a trustee or examiner has been made in this Chapter 11 case and no such appointment has occurred, and no official committees have been appointed or designated

5. The Debtor is a Church located at 2400 West Warren Blvd, Chicago, Illinois. The Debtor has only one secured creditor is BMO Harris Bank N.A.

6. In addition to the Church, the Debtor owns four three-flat buildings which are rented to tenants on a month to month basis and 13 vacant lots (a few may be used for parking). The three-flat buildings at the moment are almost fully rented. Two of the buildings, 2432 W. Warren Boulevard, Chicago, IL 60612 and 2434 W. Warren Boulevard, Chicago, IL 60612 are subject to mortgages with the Debtor's sole secured creditor BMO Harris Bank N.A. The building located at 2432 W. Warren is secured by an executed Mortgage dated April 11, 2006 in the amount of $320,000.00 at 7.73 % interest. The Note required that the Debtor would make 59 monthly payments of $2,436.67 and one 'Balloon' payment of $297,284.42 as the final payment on July 1, 2011. The building located at 2434 W. Warren is secured by an

executed mortgage dated June 30, 2006 in the amount of $320,000 at 7.73%. The Note required that the Debtor would make 59 monthly payments of $2,436.67 and one "Balloon" payment of $297,284.42 as the final payment on July 1, 2011. The Debtor was unable to make either "Balloon" payment on either Notes. Instead the Debtor and BMO Harris Bank N.A., entered into a series of Loan Modifications which seems to have extended both Notes. It also appears that the final Modification was entered into on or around 2013. However, the Debtor continued to maintain the same monthly payments of $2436.67 for each property each month, or the "Standstill Period". Despite many attempts, the Debtor has been unable to refinance these properties mainly due to the lack of equity in the properties. BMO Harris Bank, N.A. had the buildings appraised on September 25, 2014 by an "Independent Valuation Professional" at the request of BMO Harris Bank. The property located at 2432 W. Warren was appraised at $70,000 and the property located at 2434 W. Warren was also appraised at $70,000. (Attached as Exhibit A and B). BMO Harris Bank N.A. has attempted to negotiate with the Debtor; however, the Debtor believes that any agreement would result in BMO Harris Bank N.A. encumbering all or most of the Debtor's property. The Debtor is in the process of obtaining its own appraisal for purposes of this Chapter 11.

**SUMMARY STATEMENT OF RELIEF REQUESTED AND MATERIAL PROVISIONS**

7.    By this Motion, the Debtor seeks authority to use cash collateral, which generally consists of cash proceeds from Weekly Tithes and Offerings, other Church activities such as events, Sunday School, Special Events, and the income it generates from the rental units. In addition to payroll for the employees of the Church, each week the Church must pay its Speakers (individuals that paid to speak weekly at the Church to the congregation), monthly utilities, insurance, and payments of adequate protection. It is critical for the Debtor to use such cash and non-cash collateral to sustain sufficient working capital to (in the ordinary court of business) (i)

finance its ongoing post-petition business until it confirms a plan of reorganization or consummates a sale of its assets and (ii) conduct its operations. Absent the use of cash and non-cash collateral, the Debtor may no longer be able to operate the Church and pay its employees. Without an Interim Order, the Church cannot conduct services next Sunday because it would be unable to pay the Pastor or the Speakers and the inability to do so would cause irreparable economic harm to the bankruptcy estate. Consequentially, the Debtor's main sources of income derives from its dedicated parishioner's and without those Tithes and Offerings the Debtor would have no ability to fund payments to its creditors and cause harm by disrupting the Church's relations with people that rely on the charity of the Church and the Parishioners and Congregation.

8. The Debtor seeks the immediate entry of the Interim Cash Collateral Order authorizing the Debtor to use the cash and non-cash collateral and granting adequate protection until a final hearing on the Motion. The Debtor also seeks entry of a Final Cash Collateral Order after further notice and hearing. Finally, the Debtor requests that the Court schedule a final hearing on the Motion in no event later than 21 days after entry of the Interim Cash Collateral Order.

9. As described in this Motion and set forth in the Interim Cash Collateral Order, to prevent any diminution to the value of interests held by Bank in the cash and non-cash collateral, the Debtor proposed to provide Bank with the Proposed Adequate Protection (as defined below), which consist of: (a) using the cash and non-cash collateral, consistent with the Budget attached hereto as Exhibit C, to pay operating expenses and maintain the ongoing concern value of the Debtor's estate; (b) granting Bank replacement liens to the extent of any diminution in the value of its interest in the cash and non-cash collateral during the course of this Chapter 11 case.

10. The Debtor believes the Budget presented is fair and equitable, and requests this Court grant the relief requested by this Motion.

**THE DEBTOR'S PROPOSED USE OF CASH COLLATERAL AND ADEQUATE PROTECTION**

11.   As stated above, the Debtor borrowed two different loans, the first date April 11, 2006 in the amount of $320,000.00 at 7.73 % interest secured by 2432 W. Warren, Chicago, Il., and the second on June 30, 2006 in the amount of $320,000 at 7.73% interest secured by 2434 W. Warren, Chicago, Il. Both Notes matured in 2011 and modifications were entered into until 2013. As of the date of this filing the relationship between the Debtor and BMO Harris N.A. is at a "Standstill". To maintain its operations during this Chapter 11 case and finance its reorganization the Debtor requires immediate access to the cash and non-cash collateral.

12.   To ensure that BMO Harris Bank N.A. interest in the cash and non-cash collateral are not diminished during the course of this Chapter 11 case, the Debtor proposes to provide Bank with the following adequate protection (the "Adequate Protection").

  a.   The Debtor shall use the cash in which Bank assets interest on an interim basis, pending a final hearing on the Motion, pursuant to an initial budget (the "Budget"). The Budget shall be attached to an Agreed Interim Cash Collateral Order. Pursuant to the Interim Cash Collateral Order, the Debtor may exceed any individual line item in the Budget, as long as the total expenditures do not exceed 110% of the total amount of the Budget.

  b.   The Debtor shall use cash in which Bank asserts interest, to pay operating expenses of the Debtor's Church, including but without limitation to, maintenance and repaid expenses, utilities, employee compensation, payments to vendors, insurance, taxes, and restructuring-related expenses as more

specifically described in the Budget.

    c. The Debtor may not encumber or sell its assets without notice to the Bank and request of the Court.

13. By this Motion, and pursuant to Bankruptcy Rule 4001 (b), the Debtor respectfully requests this Court enter: (A) an order substantially in the form of the Interim Cash Collateral Order (i) authorizing the Debtor's use of the cash in which Bank asserts interest, (ii) allowing debtor continued use of its Liberty Bank Account ending in 3056 until it can wind-up this account and move over to the DIP account at Liberty Bank, (iii) granting Bank the Proposed Adequate Protection; and (iv) scheduling a hearing to consider entry of the Final Cash Collateral Order; (B) Deeming Bank adequately protected thereby and (C) after further notice and a hearing, entering a Final Cash Collateral Order which authorizes the relief granted in the Interim Cash Collateral Order to continue on a permanent basis.

**THE COURT SHOULD AUTHORIZE THE DEBTOR TO USE THE CASH COLLATERAL AND DEEM BANK ADEQUATELY PROTECTED**

14. Section 363(c) of the Bankruptcy Code provides that a trustee (or debtor in possession) may not use, sell, or lease cash collateral unless, "Each entity that has an interest in such cash collateral consents; or the court, after notice and a hearing, authorizes such sale, or lease in accordance for the provisions of [Section 363]." 11 U.S.C. § 362(c)(2). Further, Section 363(e) of the Bankruptcy Code delineates the forms of adequate protection that will satisfy a secured creditor's entitlement, and includes, among other things, replacement liens. 11 U.S.C. § 361. What constitutes adequate protection must be decided on a case-by-case basis and is a factual question. *See In re O'Connor,* 808 F.2s 1393,1396 (10th Cir. 1987). Adequate protection is intended to assure that a secured, during the pendency of a bankruptcy case, does not suffer a loss in the value of its interest in property of the bankruptcy estate." *In re Markos Gurness Partnership,* 252 B.R. 712, 716 (Bankr. N.D. III., 1997). If a creditor is faced with "a decline in the value of its interest in the estate's property, the estate must take action to make up the

decline, either through cash payments or liens on other property or through some other method that provides the "indubitable equivalent" of the creditors interest." *Markos Gurness,* at 716.

15. The question of adequate protection focuses on compensating a secured creditor on any diminution in the value of its security that may occur during the pendency of the automatic stay. *See Federal Nat. Mortg. v. Dacon Bolingbrook Assoc,* 153 B.R. 204, 210 (N.D. Ill. 1993); *In re Swedeland Dev. Group, Inc.,* 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (Internal citations omitted). Thus, a debtor in possession can satisfy adequate protection by maintaining the value of the collateral. See, *e.g., In re Addison Prop. Ltd. P'ship,* 185 B.R. 766, 769 (Bankr. N.D. Ill. 1995) ("it is now established that 'adequate protection' is meant only to assure that a secured creditor does not suffer a decline in the value of its interest in the estate's property, rather than to compensate the creditor for the bankruptcy-imposed delay in enforcing its rights in that property.").

16. The secured creditor's interest that is to be protected is not a right to collect against particular collateral, or a right to be compensated for any delay in the enforcement of the secured creditor's rights because of the automatic stay, but is instead an assurance that the secured creditor will realize the value of the secured portion of its claim through the Debtor's reorganization. See *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 373 (1988) ("It is obvious (since §§ 361 and 363(d)(1) do not entitle the secured creditor to immediate payment of the principle of his collateral) that this 'realization' is to 'result' not at once, but only upon completion of the reorganization. It is *then* that [the secured lender] must be assured 'realization... of the indubitable equivalent' of his collateral.")(emphasis in original).

17. Here, the Court should authorize the Debtor's use of the cash in which Bank assets interest and deem Bank adequately protected by the Proposed Adequate Protection because the Debtor has satisfied the requirements of Section 363(c) (2) and (e) of the Bankruptcy Code.[1] The interests of Bank in the

cash and noncash collateral are adequately protected within the meaning of section 363(e). The Debtor will provide Bank with the Proposed Adequate Protection, which is fair and reasonable and adequately protect interest of Bank in the cash and non-cash collateral from any diminution in value caused by the Debtor's use thereof.

18. The Debtor has a critical need for this immediate use of the cash and non-cash collateral. To maintain its operations and relations with the Members of the Church and finance this restructuring, the Debtor must have the means to satisfy, in a timely fashion, its ongoing post-petition obligations and continue its operations. Without the immediate use of cash and non-cash collateral, the Debtor will not be able to sustain the Church during the post-petition period. This would result in disruption of the Church's relations with Parishioners, Congregation, standing in the Community, the charitable work the Church is involved with, and vendors and detrimentally impact the Debtor's estate and operations. The Debtor's value to its creditors and ability to repay them arises from generating revenue from its operations and maintaining that value pending a resolution of this matter. The Church's value at any liquidation would be significantly less than from the revenue that it can generate maintaining the status quo. Further, absent the Church's strong presence in the neighborhood and without the Church's presence and upkeep the surrounding area would be weakened.

19. Use of the cash and non-cash collateral as requested in this Motion will provide the necessary assurance to the Church's parishioners, employees, and creditors of its ability to meet its financial obligations. Moreover, the Debtor's continued operation will preserve the Debtor's ongoing concern value and will allow the Church to generate cash from its member's Tithes and Offerings, rents, and other assets and will be more than adequate to protect Bank against any diminution in its interest. Accordingly, pursuant to foregoing the interests of Bank in the cash and non-cash collateral is adequately protected within the meaning of Section 363(e) by the Proposed Adequate Protection.

## INTERIM RELIEF SHOULD BE APPROVED

20. Bankruptcy Rule 4001 governs the procedures for use of cash collateral. Pursuant to Local Rule 4001-2(B) this Court may enter an interim order that contains the relief requested herein in the presence of extraordinary circumstances. Bankruptcy Rule 4001 (b)(2) gives guidance to this Court entered such an order, by authorizing this Court to conduct a preliminary hearing on a request for authority to use cash collateral (prior to 14 days after the service of a motion requesting that relief) "**as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing**." Fed. R. Bankr. P. 4001(b) (2).

21. Accordingly, this Court is empowered to conduct a preliminary expedited hearing on the Motion and authorize the interim use of cash and non-cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor' estate.

22. As set forth above, the Debtor seeks entry of the Interim Cash Collateral Order to avoid immediate and irreparable harm to its estate, its assets and its creditors. This interim relief will enable the Debtor to operate its business in the ordinary court and to pay necessary expenses and avoid immediate and irreparable harm o its estate pending a final hearing on the Motion.

## THE DEBTOR HAS COMPLIED WITH BANKRUPTCY RULE 4001 & LOCAL RULE 4001-2.

23. Local Rule 4001-2 requires the Debtor to (a) highlight certain provisions contained in the Interim Cash Collateral Order, identity the location of any such provision in such order, and state the justification for the inclusion of such provision and (b) provide a summary of all such provisions. *Se* Local Rules 4001-2(A) (2) and (3). The Debtor believes that this Motion satisfies Local Rules 4001-2(A) (2) and (3). The provisions identified in 4001-2(A) (2)(a) through (j) are not included in the Interim Cash Collateral Order.

24. Local Rule 4001-2(A) (4) also requires that all cash collateral motions must provide a budget covering the time period in which the order shall remain in effect. Local Rule 4001-

2(A)(4). In satisfaction of that requirement, the Budget is attached to the Interim Cash Collateral Order. The Debtor will file updated versions of the Budget with the Court as such updates become available.

### REQUEST FOR A FINAL HEARING

25. Pursuant to Bankruptcy Rule 4001 (d), the Debtor requests that the Court (a) set a date for a final hearing (the "Final Hearing") on the Motion as soon as practicable, but in no event alter than 21 days after the entry of the Agreed Interim Cash Collateral Order, to hold a hearing to consider entry of the Final Cash Collateral Order and (b) set the deadline for filing objections to the Final Cash Collateral Order as no later than 7 days before the Final Hearing. The Debtor also requests that such dates be reflected in the Interim Cash Collateral Order as enter by the Court. Finally, the Debtor retests authority to service a copy of the Interim Cash Collateral Order by first class mail upon the notice parties listed below, and further requests that the Court deem service thereof sufficient notice of the hearing on the Final Cash Collateral Order under Bankruptcy Rule 4001 (d) and Local Rule 4001-2(C).

### DUE NOTICE HAS BEEN PROVIDED

26. Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) counsel for BMO Harris Bank, N.A.; and (c) any party which has appeared and/or requested notice. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

WHEREFORE, the Debtor respectfully requests this Court (a) enter an order substantially in the form of the Interim Order

(A) Authorizing the Debtor's use of cash and non-cash collateral, including allowing debtor continued use of its account at Liberty Bank ending in 3506 until all the

necessary transfers are done into the DIP account which is now active at the same bank.

(B) Granting adequate protection to Bank ("Bank") and deeming Bank adequately protected thereby, and

(C)   Scheduling a hearing to consider entry of a Final Cash Collateral Order; and after further notice and a hearing, a Final Cash Collateral Order, and

(D) Such other and further relief as the Court deems just and proper.

                                            Respectfully submitted,

                                            /s/Robert J. Adams

| | |
|---|---|
| Christine Adams | Debtor-ln-Possession herein. |
| ROBERT ADAMS and Assoc. | By Robert J. Adams |
| 901 W. Jackson, Suite 202 | One of its attorneys |
| Chicago, IL 60603 | |
| 312-346-0100/847-223-5500 F. 312-346-0100 | |